# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | |
|---|---|
| HELEN OF TROY LIMITED CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>LUXURY BRANDS, LLC d/b/a FHI HEAT, and THOMAS GEBHART,<br><br>Defendants. | Case No. 3:19-cv-377<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

COMES NOW Plaintiff Helen of Troy Limited ("Helen of Troy") for its Complaint against Luxury Brands, LLC ("Luxury Brands") and Thomas Gebhart ("Gebhart") (collectively, "Defendants"), and state as follows:

## NATURE OF THE ACTION

1.  This action is brought by Plaintiff Helen of Troy to put an end to Defendants' wrongful importation, distribution, advertising, marketing and sale in the United States of hair products that infringe Helen of Troy's trade dress rights.

2.  This is an action for trade dress infringement under Section 32 of the Lanham Act, 15 U.S.C. §§ 1114 (Registered Trademark Infringement); Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (False Designation of Origin); and the common law of the State of Texas.

## PARTIES

3.  Helen of Troy is a corporation organized under the laws of Barbados, with its principal place of business at Bishop's Court Hill, Suite 1, The Financial Services Centre, St.

Michael, Barbados, 14004.  Its United States headquarters and principal place of business is located at 1 Helen of Troy Plaza, El Paso, Texas 79912.

4. Helen of Troy is an industry-leading designer, developer and worldwide marketer and seller of consumer brand-name products, including hair care and hair appliance products.  Helen of Troy owns numerous trademarks and trade dress rights for distinctive hair appliances.

5. Defendant Luxury Brands, LLC is limited liability company organized under the laws of the state of California with a registered place of business at 12840 Leyva Street, Norwalk, California 90650.  Luxury Brands does business as "FHI Heat" as a seller of hair products, including electric irons for styling hair.

6. Defendant Thomas Gebhart is the Chief Operating Officer of Luxury Brands and, on information and belief, is responsible for strategy and development of brand initiatives including new product development, global sales and distribution, and marketing strategy for Luxury Brands.  Defendant Gebhart was formerly Senior Vice President and General Manager of Belson, a subsidiary of Helen of Troy, and is knowledgeable regarding Helen of Troy's branding, trademark and trade dress rights for Helen of Troy's hair care and appliance products.  On information and belief, Gebhart resides in the Los Angeles, California area.

**JURISDICTION AND VENUE**

7. This is a civil action arising from Defendants' misuse of Helen of Troy's trade dress.  The claims alleged in this Complaint arise under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and under Texas common law.

8. This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. §§ 1121, and 28 U.S.C. §§ 1331 and 1338.

9.      This Court has supplemental jurisdiction over Helen of Troy's state law claim pursuant to 28 U.S.C. § 1367(a).

10.     Defendant Luxury Brands has infringed, and continues to infringe, Helen of Troy's federally registered trademark and trade dress rights, as well as Helen's rights under the common law, in connection with hair curling irons, specifically in Defendant Luxury Brands' unauthorized use of the trademark and trade dress rights in its advertising and promotion of hair curling irons, leading to the sale and distribution of the products to residents and citizens of Texas who reside within this district.

11.     Defendant Gephart, the Chief Operating Officer of Luxury Brands, had prior knowledge of Helen of Troy's trademark and trade dress rights and, upon information and belief, personally authorized and approved the copying of Helen of Troy's products incorporating the trademark and trade dress rights, and personally authorized, directed and participated in the unauthorized use of the trademark and trade dress rights in conjunction with products distributed throughout the United States, including to residents and citizens of Texas who reside within this district.

12.     The Court has personal jurisdiction over Defendants because they have actively engaged in the advertising for sale, offers for sale, sales, and/or distribution of the products incorporating the infringing trade dress in Texas, including the Western District of Texas, thereby harming Helen of Troy by offering to sell, and/or selling infringing products in this district.

13.     Venue is proper in the Western District of Texas pursuant to 28 U.S.C. § 1391(b) as, upon information and belief, a substantial part of the events giving rise to the claims occurred in the district.  Defendant Luxury Brands has sold and distributed products that infringe Helen of Troy's federally registered trademarks and trade dress and common law rights to citizens of Texas

who reside within this district, and Defendants' conduct was directed towards and intended to cause harm to Helen of Troy in this district.

## FACTUAL BACKGROUND

*Helen of Troy's Trade Dress Rights*

14. Helen of Troy is a leading global developer and seller of highly-regarded hair appliance product, including, most notably for the instant matter, electric curling irons for styling hair sold under the well-known Hot Tools® brand.

15. For many years, and well before the acts of Defendants identified herein, Helen of Troy has used a distinctive source-identifying product configuration (referred to herein as the "Trade Dress") to indicate the original of its electric hair curling irons. The product configuration incorporates the following trade dress, which is the subject of U.S. Trademark Registration No. 4,464,659, and has received incontestable status with the United States Patent and Trademark Office ("USPTO"):



A true and correct copy of the trademark registration for this mark is attached hereto as Exhibit 1.

16. A photograph of Helen of Troy products incorporating the Helen of Troy Trade Dress is set forth below.



17.     The Trade Dress has been in continuous and substantially exclusive use for many years.  In addition, the Trade Dress has been and continues to be the subject of the expenditure of substantial dollars in promotion and advertising in various media in the United States.  As a result of the extensive advertising and wide distribution of its hair curling irons by Helen of Troy and by third party retailers and distributors for hair appliance products, the Trade Dress is recognized as an indicator of source of Helen of Troy's high-quality and hair curling irons and is the embodiment of the substantial and valuable goodwill associated with Helen of Troy's products.

18.     The iconic status of Helen of Troy's Trade Dress is favorably recognized and relied upon by the relevant trade and consuming public as indicating high quality goods originating exclusively from a single source.  The Trade Dress is immediately known to consumers nationwide and conveys a substantial amount of goodwill.

19.     The distinctive Trade Dress serves to identify Helen of Troy as the source of its Hot Tools® hair curling irons.  The configuration of the registered trade dress is aesthetic, and is not optimal in terms of engineering, economy of manufacture, or accommodation of utilitarian function.  There are many non-infringing designs available for other to use, so no competitor has a legitimate need to use the Trade Dress in order to manufacture and sell a hair curling iron.  Indeed, there are several other manufactures and sellers of hair curling irons that compete successfully in the electric hair curing iron market without copying the unique product configuration of Helen of

Troy's products.

*Defendants' Unlawful Acts*

20.     Defendant Luxury Brands recently began importing, distributing, advertising, marketing, offering for sale, and/or selling in the United States electric curling irons that incorporate Hellen of Troy's Trade Dress in a blatant, willful and knowing attempt to trade off the goodwill that Helen of Troy has developed.

21.     Defendant Gebhart, Defendant Luxury Brands' Chief Operating Officer with responsibility for strategy for new product development for Luxury Brands, brazenly announced to Helen of Troy management personnel at an industry trade show that he was copying one of Helen of Troy's hair appliance products.  Upon information and belief, Defendant Gebhart, with full knowledge of the iconic status of Helen of Troy's trade dress, personally authorized and approved the copying of Helen of Troy's product incorporating the Trade Dress, and personally authorized, directed and participated in the unauthorized use of the Trade Dress in conjunction with products distributed throughout the United States.

22.     A picture of Defendant Luxury Brands "24K Professional Gold Curler" reveals the virtual identity in design:



23.     Defendant Luxury Brands is marketing and selling its blatant knock-off curling irons incorporating Helen of Troy's Trade Dress on Luxury Brands' website, www.fhiheat.com,

and, upon information and belief, is preparing to distribute the same products through other channels of trade. A true and correct copy of website pages from the Luxury Brands website featuring the hair curling irons is attached as Exhibit 2.

24. Defendant Luxury Brands' "24K Professional Gold Curler" have a product configuration that is virtually identical to Helen of Troy's well-known Trade Dress. As with Helen of Troy's hair curling irons, Defendant Luxury Brands' products have:

- Stylized cylindrical elements at the end of the handle;
- Thumb control grip connected to a shovel-like clip;
- Protruding cylindrical elements on the handle grip; and
- Rounded features at the end of the heating element.

25. Defendant Luxury Brands' product configuration for its "24K Professional Gold Curler" product line creates a confusingly similar commercial impression to the Helen of Troy Trade Dress. Further exacerbating this confusingly similar commercial impression, Defendant Luxury Brands' has also copied various elements of Helen of Troy's distinctive product packaging, including the look and feel of Helen of Troy's product packaging.

26. Upon information and belief, Defendant Luxury Brands imports the infringing hair curling irons into the United States, where they are then distributed, advertised, marketed, offered for sale and sold in the United States.

27. Upon information and belief, Defendant Luxury Brands has advertised, marketed, offered for sale and sold infringing hair curling irons throughout the United States and within this District. A true and correct copy of website pages from the Luxury Brands website offering the curling irons for sale is attached as Exhibit 3.

28. Defendant Luxury Brands and Helen of Troy's hair curling irons compete and are offered in identical channels of trade.

29. Defendants have had constructive and actual knowledge of Helen of Troy's federal trademark registration for its Trade Dress.

30. Upon information and belief Defendants engaged in these acts with the knowledge of Helen of Troy's rights and the willful intent to violate same.

31. Defendants' unlawful actions are having, and will continue to have, a substantial and adverse effect on United States commerce.

32. Unless preliminarily and permanently enjoined, Defendants' wrongful acts and willful infringement have caused, and will continue to cause, irreparable harm to Helen of Troy, such as loss of control to its reputation and loss of substantial consumer goodwill, for which Helen of Troy as no adequate remedy at law.

33. Defendants are profiting and will continue to profit from their unlawful actions.

34. Defendants' actions are causing and will continue to cause Helen of Troy monetary damage in amounts presently unknown but to be determined at trial.

## COUNT I
## TRADEMARK INFRINGMENT
## UNDER THE LANHAM ACT, 15 U.S.C. § 1114

35. Helen of Troy repeats and realleges as if fully set forth herein the facts and allegations of all of the preceding paragraphs.

36. Helen of Troy is the owner of the Trade Dress and U.S. Trademark Registration No. 4,464,659.

37. Defendants' use of the Trade Dress, without Helen of Troy's authorization or consent, has caused and/or is likely to cause confusion or mistake, or to deceive consumers regarding the source, sponsorship and/or affiliation of the goods imported, offered and sold by Defendants.

38. Defendants have acted willfully and deliberately and have profited and been

unjustly enriched by sales they would not otherwise have made but for their unlawful conduct.

39. By virtue of the foregoing, Defendants have caused Helen of Troy to suffer injuries for which it is entitled to recover compensatory damages including, but not limited to, Helen of Troy's lost profits.

40. Defendants' acts are causing and continue to cause Helen of Troy irreparable harm in the nature of loss of control over its reputation and loss of substantial consumer goodwill. This irreparable harm to Helen of Troy will continue, without any adequate remedy at law, unless and until Defendants' unlawful conduct is enjoined by this Court.

41. Helen of Troy has been and will continue to be harmed by Defendants' conduct in an amount to be determined at trial.

42. Defendants' acts constitute trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a).

## COUNT II
## FALSE DESIGNATION OF ORIGIN
## UNDER THE LANHAM ACT, 15 U.S.C. § 1125(a)

43. Helen of Troy repeats and realleges as if fully set forth herein the facts and allegations of all of the preceding paragraphs.

44. Helen of Troy is the owner of the Trade Dress.

45. By their unauthorized uses of the Trade Dress, Defendants have falsely designated the origin of their products and have competed unfairly with Helen of Troy in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

46. Defendants have acted willfully and deliberately and have profited and been unjustly enriched by sales they would not otherwise have made but for their unlawful conduct.

47. By virtue of the foregoing, Defendants have caused Helen of Troy to suffer injuries for which it is entitled to recover compensatory damages including, but not limited to, Helen of

Troy's lost profits.

48. Defendants' acts are causing and continue to cause Helen of Troy irreparable harm in the nature of loss of control over its reputation and loss of substantial consumer goodwill. This irreparable harm to Helen of Troy will continue, without any adequate remedy at law, unless and until Defendants' unlawful conduct is enjoined by this Court.

49. Helen of Troy has been and will continue to be harmed by Defendants' conduct in an amount to be determined at trial.

50. Defendants' acts constitute false designation of origin and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## COUNT III
## COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

51. Helen of Troy repeats and realleges as if fully set forth herein the facts and allegations of all of the preceding paragraphs.

52. Helen of Troy, at great expense and effort, has acquired a property interest in the Trade Dress in connection with its goods.

53. Defendants' use of the Trade Dress has caused and/or is likely to cause confusion or mistake, or to deceive consumers regarding the source, sponsorship and/or affiliation of the goods imported, offered and sold by Defendants.

54. Defendants' conduct is an attempt to wrongfully profit from the expense, effort and reputation of Helen of Troy within the State of Texas.

55. Defendants have acted willfully and deliberately and have profited and been unjustly enriched by sales they would not otherwise have made but for their unlawful conduct.

56. By virtue of the foregoing, Defendants have caused Helen of Troy to suffer injuries for which it is entitled to recover compensatory damages including, but not limited to, Helen of

Troy's lost profits.

57. Defendants' acts are causing and continue to cause Helen of Troy irreparable harm in the nature of loss of control over its reputation and loss of substantial consumer goodwill. This irreparable harm to Helen of Troy will continue, without any adequate remedy at law, unless and until Defendants' unlawful conduct is enjoined by this Court.

58. Helen of Troy has been and will continue to be harmed by Defendants' conduct in an amount to be determined at trial.

59. Defendants' acts constitute trademark infringement and unfair competition in violation of the common law of the State of Texas.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Helen of Troy respectfully requests that the Court:

A. Grant judgment in favor of Helen of Troy and against Defendants on all of Helen of Troy's claims.

B. Preliminarily and permanently enjoin and restrain Defendants, their officers, agents, subsidiaries, servants, partners, employees, attorneys and all others in active concert or participation with them, from:

(1) Making any use of the Trade Dress, or any designation of origin confusingly similar thereto, including offering to sell, selling, distributing, or importing into the U.S. hair curling irons incorporating the Trade Dress;

(2) Infringing the Trade Dress;

(3) Unfairly competing with Helen of Troy in the manufacture, importation, advertising, offering for sale, sale, shipment and/or distribution of hair curling irons;

(4) Disposing of, destroying, moving, secreting, relocating and/or transferring any all of Defendants' inventory of hair curling irons incorporating the Trade Dress, without Court

direction;

  (5) Disposing of, destroying, moving secreting, relocating and/or transferring any information, records, and/or documents in Defendants' possession pertaining to their purchase importation, receipt, advertising, offering for sale, sale, shipment and/or distribution of hair curling irons incorporating the Trade Dress; and,

  (6) Assisting, aiding or abetting any other person or business entity in engaging in or performing any of the aforementioned activities.

  C. Order Defendants to, at Defendants' expense, withdraw from the market, account for and properly destroy any and all products incorporating the Trade Dress;

  D. Order Defendants, pursuant to 15 U.S.C. § 1116, to serve on Helen of Troy within thirty (30) days after service on Defendants of preliminary or permanent injunctive orders, a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

  E. Order Defendants to account for, and pay over to Helen of Troy, Defendants' profits and all damages sustained by Helen of Troy;

  F. Increase the amount of damages and/or profits awarded to Helen of Troy, as provided by law;

  G. Award Helen of Troy such treble and punitive damages for Defendants' willful and intentional acts of unfair competition of Helen of Troy's rights that the Court shall deem just and proper;

  H. Award Helen of Troy the fees, costs and disbursements, and interest, expended in connection with any actions taken to investigate and confirm the claims made herein;

  I. Award Helen of Troy its reasonable attorneys' fees, costs, disbursements, and

interest, as provided by law;

J.      Award corrective advertising in a monetary amount to rectify and dispel the confusion caused by Defendants; and

K.      Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff Helen of Troy hereby demands a trial by jury on all issues appropriately triable by a jury.

Respectfully submitted,

/s/ David M. Mirazo
MOUNCE, GREEN, MYERS, SAFI, PAXON & GALATZAN, P.C
100 N. Stanton
Suite 1000
P.O. Box 1977
El Paso, TX  79999-1977
Telephone:    (915) 532-2000
Facsimile:     (915) 541-1526
Email:          mirazo@mgmsg.com

Jeffrey D. Harty (pro hac application forthcoming)
David T. Bower (pro hac application forthcoming)
NYEMASTER GOODE, P.C.
700 Walnut Street, Ste. 1600
Des Moines, IA 50309-3899
Telephone: (515) 283-3100
Facsimile:  (515) 283-3108
Email:   jharty@nyemaster.com
Email    dbower@nyemaster.com

***Attorneys for Plaintiff Helen of Troy Limited Corporation***